# HORNING *v.* DISTRICT OF COLUMBIA.

### CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 77.   Argued November 8, 9, 1920.—Decided November 22, 1920.

One whose intentional conduct violates the prohibitions of a penal statute is not excused by his purpose to keep within the law and his belief that he did so. P. 137.

The offense of engaging without license in the business of lending money on security at more than 6 per cent. interest, in the District of Columbia (Act of February 4, 1913, c. 26, 37 Stat. 657), is committed by a pawnbroker who receives applications, examines pledges and decides upon loans only at a place just beyond the District line, but who maintains an establishment in the District where the pledges are kept and returned, and where intending borrowers may find a free automobile service to take them to him in person, or a paid messenger service, not belonging to the pawnbroker, by which their applications and pledges may be taken to him and the money and pawn tickets brought back and delivered to them. *Id.*

In a criminal case, when undisputed facts, including the testimony of the defendant, clearly establish the offense charged, the judge may say so to the jury, tell them that there is no issue of fact for their determination and instruct them that, while they cannot be constrained to return a verdict of guilty, it is their duty to do so under their obligation as jurors. *Id.*

*Held,* that if the defendant suffered any wrong from the manner in which such instructions were given in the present case, it was purely formal, since there could be no doubt of his guilt on the facts admitted; and the error, if any, was cured by § 269, Jud. Code, as amended February 26, 1919. P. 138.

48 App. D. C. 380, affirmed.

THE case is stated in the opinion.

*Mr. Henry E. Davis* for petitioner.

*Mr. Robert L. Williams,* with whom *Mr. F. H. Stephens* and *Mr. P. H. Marshall* were on the brief, for respondent.

MR. JUSTICE HOLMES delivered the opinion of the court.

This case comes here upon a writ of certiorari granted to review a judgment of the Court of Appeals that affirmed a conviction of the petitioner of doing business as a pawnbroker and charging more than six per cent. interest, without a license, which is forbidden by the Act of Congress of February 4, 1913, c. 26, 37 Stat. 657. 48 App. D. C. 380.

The external facts are not disputed. The defendant had been in business as a pawnbroker in Washington but anticipating the enactment of the present law removed his headquarters to a place in Virginia at the other end of a bridge leading from the city. He continued to use his former building as a storehouse for his pledges but posted notices on his office there that no applications for loans would be received or examination of pledges made there. He did, however, maintain a free automobile service from there to Virginia and offered to intending borrowers the choice of calling upon him in person or sending their application and security by a dime messenger service not belonging to him but established in his Washington building. If the loan was made, in the latter case the money and pawn ticket were brought back and handed to the borrower in Washington. When a loan was paid off the borrower received a redemption certificate, presented it in Washington and got back his pledge. The defendant estimated the number of persons applying to the Washington office for loans or redemption at fifty to seventy-five a day. His Washington clerk, a witness in his behalf, put it at from seventy-five to one hundred. We may take it that there was a fairly steady stream of callers, as is implied by the automobile service being maintained. It is said with reference to the charge of the judge to which we shall advert that there was a question

for the jury as to the defendant's intent. But we perceive none. There is no question that the defendant intentionally maintained his storehouse and managed his business in the way described. It may be assumed that he intended not to break the law but only to get as near to the line as he could, which he had a right to do, but if the conduct described crossed the line, the fact that he desired to keep within it will not help him. It means only that he misconceived the law.

As to whether the conduct described did contravene the law, it is urged that a pledgee has a right to keep the pledged property where he likes and as he likes provided he returns it in proper condition when redeemed. But that hardly helps the defendant. To keep for return, whatever latitude there may be as to place and mode, is part of the duty of a pledgee, and in the case of one who makes a business of lending on pledges is as much a part of his business as making the loan. As we read the statute its prohibition is not confined to cases where the whole business is done in Washington. If an essential part of it is done there and a Washington office is used as a collecting centre, it does not matter that care is taken to complete every legal transaction on the other side of the Potomac. We cannot suppose that it was intended to allow benefits so similar to those coming from business done wholly in the city to be derived from acts done there and yet go free. We are of opinion that upon the undisputed evidence the defendant was guilty of a breach of the law and turn at once to the question which seemed to warrant allowing the case to be brought to this Court.

The question relates to the charge of the judge. The judge said to the jury that the only question for them to determine was whether they believed the concurrent testimony of the witnesses for the Government and the defendant describing the course of business that we have stated and as to which there was no dispute. Those facts,

he correctly instructed them, constituted an engaging in business in the District of Columbia. This was excepted to and the jury retired. The next day they were recalled to Court and were told that there really was no issue of fact for them to decide; that they were not warranted in capriciously saying that the witnesses for the Government and the defendant were not telling the truth; that the course of dealing constituted a breach of the law; that it was their duty to accept this exposition of the law; that in a criminal case the Court could not peremptorily instruct them to find the defendant guilty but that if the law permitted he would. The Court added that a failure to bring in a verdict could only arise from a flagrant disregard of the evidence, the law, and their obligation as jurors. On an exception being taken the judge repeated that he could not tell them in so many words to find the defendant guilty but that what he said amounted to that; that the facts proved were in accord with the information and that the Court of Appeals had said that that showed a violation of law.

This was not a case of the judge's expressing an opinion upon the evidence, as he would have had a right to do. *Graham* v. *United States*, 231 U. S. 474, 480. The facts were not in dispute, and what he did was to say so and to lay down the law applicable to them. In such a case obviously the function of the jury if they do their duty is little more than formal. The judge cannot direct a verdict it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, and he can do the same none the less when the facts are agreed. If the facts are agreed the judge may state that fact also, and when there is no dispute he may say so although there has been no formal agreement. Perhaps there was a regrettable peremptoriness of tone—

but the jury were allowed the technical right, if it can be called so, to decide against the law and the facts—and that is all there was left for them after the defendant and his witnesses took the stand. If the defendant suffered any wrong it was purely formal since, as we have said, on the facts admitted there was no doubt of his guilt. Act of February 26, 1919, c. 48, 40 Stat. 1181, amending § 269 of the Judicial Code; Act of March 3, 1911, c. 231, 36 Stat. 1087.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS dissents.

MR. JUSTICE BRANDEIS, dissenting.

It has long been the established practice of the federal courts that, even in criminal cases, the presiding judge may comment freely on the evidence and express his opinion whether facts alleged have been proved. Since *Sparf* v. *United States,* 156 U. S. 51, it is settled that, even in criminal cases, it is the duty of the jury to apply the law given them by the presiding judge to the facts which they find. But it is still the rule of the federal courts that the jury in criminal cases renders a general verdict on the law and the facts; and that the judge is without power to direct a verdict of guilty although no fact is in dispute. *United States* v. *Taylor,* 11 Fed. Rep. 470; *Atchison, Topeka & Santa Fe Ry. Co.* v. *United States,* 172 Fed. Rep. 194. What the judge is forbidden to do directly, he may not do by indirection. *Peterson* v. *United States,* 213 Fed. Rep. 920. The judge may enlighten the understanding of the jury and thereby influence their judgment; but he may not use undue influence. He may advise; he may persuade; but he may not command or coerce. He does coerce when without convincing the judgment he overcomes the will by the weight of his authority. Compare *Hall* v. *Hall,* L. R. 1, P. & D. 481, 482.

The character of the charge in this case is illustrated by the following paragraph:

"In conclusion, I will say to you that a failure by you to bring in a verdict in this case can arise only from a wilful and flagrant disregard of the evidence and the law as I have given it to you, and a violation of your obligation as jurors. . . . Of course, gentlemen of the jury, I cannot tell you, in so many words, to find defendant guilty, but what I say amounts to that."

In my opinion, such a charge is a moral command, and being yielded to, substitutes the will of the judge for the conviction of the jury. The law which in a criminal case forbids a verdict directed "in so many words," forbids such a statement as the above.[1]

It is said that if the defendant suffered any wrong it was purely formal; and that the error is of such a character as not to afford, since the Act of February 26, 1919, c. 48, 40 Stat. 1181, a basis for reversing the judgment of the lower court. Whether a defendant is found guilty by a jury or is declared to be so by a judge is not, under the Federal Constitution, a mere formality. *Blair* v. *United States*, 241 Fed. Rep. 217, 230. The offence here in question is punishable by imprisonment. Congress would have been powerless to provide for imposing the punishment except upon the verdict of the jury. *Callan* v. *Wilson*, 127 U. S. 540; *Thompson* v. *Utah*, 170 U. S. 343. I find nothing in the act to indicate that it sought to do so.

Because the presiding judge usurped the province of the jury, I am unable to concur in the judgment of the court.

The Chief Justice and Mr. Justice Day concur in this dissent.

---

[1] Compare *People* v. *Sheldon*, 156 N. Y. 268; *State* v. *Bybee*, 17 Kan. 462; *Meadows* v. *State*, 182 Ala. 51; *Randolph* v. *Lampkin*, 90 Ky. 551; *McPeak* v. *Missouri Pacific Ry. Co.*, 128 Mo. 617; *State* v. *Tulip*, 9 Kan. App. 454; *Lively* v. *Sexton*, 35 Ill. App. 417. See *Starr* v. *United States*, 153 U S. 614, 626.