**WISSEL et al. v. UNITED STATES.**

Circuit Court of Appeals, Second Circuit. November 14, 1927.

No. 74.

1. Criminal law ⬅⬆863(2)—Instruction regarding jury's duty to settle case, given when jury returned asking for further instructions, held not objectionable (Cr. Code, § 37 [18 USCA § 88]).

In prosecution for conspiracy to facilitate concealment and transportation of liquor, knowing that it had been brought into country in violation of Criminal Code, § 37 (18 USCA § 88), instruction regarding jury's duty to settle case, given when jury returned to courtroom, announcing that it was deadlocked, and asked for further instructions, but did not particularize as to what they wished to be instructed on, held not subject to complaint.

2. Criminal law ⬅⬆863(2)—Instruction in effect that verdict of not guilty was setting at defiance law and reason, when jury gave promise of disagreeing, held erroneous, and deprived defendants of fair and impartial trial (Cr. Code, § 37 [18 USCA § 88]).

In prosecution for conspiracy to facilitate concealment and transportation of liquor, with

knowledge that it had been unlawfully brought into country, in violation of Criminal Code, § 37 (18 USCA § 88), instruction in effect and substance telling jury that verdict of not guilty was setting at defiance law and reason, given when jury requested bill of indictment after they had been deliberating some time, and when they gave promise of disagreeing, and where jury promptly found defendants guilty thereafter, *held* erroneous, and deprived defendants of fair and impartial trial, since it was by indirection doing what law forbids judge to do directly, directing verdict of guilty.

**3. Criminal law ⟲865(1)—Judge may not command or coerce verdict of guilty.**

A judge may not use undue influence to command or coerce verdict of guilty.

**4. Criminal law ⟲865(1)—Punishment may be imposed only on jury's verdict, which may not be forced.**

Punishment may be imposed only on verdict of jury, and no judge has power or authority by indirection to visit punishment on any one through forcing jury's verdict.

**5. Criminal law ⟲865(1)—Jury must be left free to reach its own conclusions and record its conscientious convictions.**

A jury must be left free to reach its own conclusions and to record its conscientious convictions.

In Error to the District Court of the United States for the Southern District of New York.

Henry Wissel and others were convicted of conspiracy to facilitate concealment and transportation of liquor with knowledge that it had been unlawfully brought into country, in violation of Criminal Code, § 37 (18. USCA § 88), and they bring error. Reversed.

Joseph F. X. Malloy, of Jersey City, N. J. (Martin Conboy, of New York City, of counsel), for plaintiff in error Ritz.

David V. Cahill, of New York City, for other plaintiffs in error.

Charles H. Tuttle, U. S. Atty., of New York City (Herman T. Stichman, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge. The plaintiffs in error were tried on an indictment containing three counts, charging a criminal conspiracy beginning November 1, 1925, and continuing until July 21, 1926. Each count was based upon the same transaction. The overt acts in all three counts were substantially the same, except that the first count contained more in number. The charge of

the first count was importing unlawfully into the United States cases of liquor; the second, a conspiracy to smuggle and clandestinely introduce the same into the United States; and the third, to facilitate the concealment and transportation of the liquor with knowledge that it had been unlawfully brought into the country.

The plaintiffs in error were acquitted on the first two counts and convicted on the third. There were 19 placed on trial, the indictment was dismissed as to 2 on motion of the government, 15 were convicted, and 2 acquitted.

This liquor was purchased in Canada and other foreign countries, brought by the vessel Tilli to the Bahamas, where, in March and April, 1926, it was transshipped on the steamship Eker and unlawfully brought into the port of New York, and to a point on the North River opposite Edgewater, N. J., where it was to be transshipped to barges and boats and then forwarded by automobile and motor trucks. Three of the conspirators who pleaded guilty became witnesses for the government. They outlined the conspiracy and the parts played by the several defendants, including the plaintiffs in error. Wissel was the mayor of Edgewater; Dinan, captain of police; Flannery and Pickering, two police patrolmen; and Ritz employed in the service of the internal revenue. The evidence of the government witnesses created a jury question as to the connection of each of the plaintiffs in error with the conspiracy.

There was evidence of an agreement made with each of them, whereby in January, 1926, Dinan, Flannery, and Pickering agreed to facilitate the importation at Edgewater under the protection of Mayor Wissel in return for $2 a case; that Dinan was paid $8,500, Wissel $22,500, and Ritz, the customs inspector, $500. The witness who paid the plaintiffs in error testified to making such payments. The plaintiffs in error did not testify, but did offer character evidence in defense. These convictions would be affirmed, but for errors committed in the charge of the District Judge, which require our reversal of the judgment below.

Counsel for all the defendants on trial, as well as counsel for the government, waived the right to sum up for their respective clients. The case was thereupon submitted to the jury on the charge of the trial judge. He had not proceeded far in the charge, when he was interrupted by counsel representing the defendants, who protested against what he termed a summation for the government, and after some colloquy the trial judge gave

assurance that he would confine his charge to a statement of the principles of law applicable to the evidence, and the charge proceeded. At the end thereof, exceptions were noted for failure to instruct the jury as to the importance and weight of the testimony of good character offered. The jury retired, at 3:15 p. m. and returned to the courtroom at 7:55 p. m. announcing that it was deadlocked, and asked for further instructions, but not particularizing as to what they wished to be instructed upon. Whereupon the court said:

"I know of nothing further to say to you about the case, unless you would indicate something to direct my attention to some particular point in it, except this: This is a very simple and a very important case. It is important for the government, and it is equally important for each of these defendants. You have heard the evidence in the case, and you recollect more or less the evidence that was brought out at the trial. It is your duty, if you can do so in good conscience, to settle the case one way or the other. It is your duty to the government, and it is your duty to these defendants. The case is of such importance as requires a settlement by a verdict of the jury. It is your duty to deliberate with a verdict in view, and while I, personally, would like to do everything I possibly can for your convenience and comfort, I feel the case is of such importance that it will be necessary to keep you together until you can have agreed, or until you do agree upon a verdict. You may retire, gentlemen, and return your verdict."

[1] While exception was taken to this instruction, it was without merit, for no complaint can be made to the fair and accurate statement of the jury's duty. Before retiring, the jury, following a request of counsel, were further instructed:

"Each juror is entitled to his own conscientious conviction about the case, and each juror is to follow that conviction, not arbitrarily or just because he has the power to do so, but with an open mind and clear conscience, listening to the reasons advanced for or against conviction, and acting, in the final analysis, as a juror would act with regard to any matter of importance that might come up for him to pass upon."

The jury retired at 8 p. m. and again returned at 9:58 p. m., requesting that the bill of indictment be sent in for their consideration. This was declined, but the court explained the substance of the charges of the indictment. Although the court in that part of the charge heretofore quoted had fully charged as to the duty and function of the jury, he thereupon said:

"A jury may arbitrarily set at defiance law and reason, and refuse to convict the accused by returning a verdict of not guilty. When a jury does that, the guilty escape, no matter how plain the guilt. To set at defiance law and reason may be in the power of a jury, but such defiance is not within the jury's right. The jury is as much bound by the law and by their conscience as is the court. I cannot instruct you directly as to what your verdict should be, for it is in your function to decide the question of fact in this case. However, I consider it my duty to say to you that in my opinion, upon the evidence offered in this case, you should find no difficulty in returning your verdict."

After deliverance of this supplementary charge, counsel tried unsuccessfully to note an exception; but after the jury retired at 10:08 counsel said:

"I take an exception to the court's refusal to permit me to note my exceptions in the presence of the jury, after the court delivered its animated direction to the jury, without any request on the part of the jury to be instructed, other than as to the meaning of the three counts. I except, not only to what the court said, which, in view of what the court previously stated in the presence and hearing of the jury, amounted to a direction on the part of the jury that they must agree with the obvious conviction on the part of the court that that verdict which they are obliged to render is a verdict of guilty.

"I object, not only to the language, but to the manner in which it was uttered, the emphasis with which it was delivered, the gestures with which it was accompanied, because all of it conveyed clearly and obviously, not only the court's desire that there should be an agreement, but that clearly and unmistakably told the jury, after it had deliberated for hours, precisely what character of verdict it should render."

Some further colloquy occurred between the court and counsel with reference to the refusal to permit counsel to note his exception in the presence of the jury. The jury returned at 10:33, finding the verdict as stated above.

[2] The effect of this charge, to which exception was taken in the phrase above quoted, was that the jury, which gave promise of disagreeing, promptly decided adverse to the plaintiffs in error. This court, in Seiden v. United States, 16 F. (2d) 197, supplied the phrase which the learned court used in the charge now objected to. Its use, however,

while appropriate for the question presented in the Seidon Case, was inappropriate here, particularly at the stage of the trial when it was used by the trial judge. Its use could not have been designed as helpful in assisting the jury in arriving at its unbiased judgment. However correct the legal statement was in that opinion, the use made by the trial judge at this important hour of the jury's debate in effect and substance told them a verdict of not guilty was setting at defiance law and reason. It was by indirection doing what the law forbids a judge to do directly—direct a verdict of guilty. Peterson v. United States (C. C. A.) 213 F. 920; Atchison, Topeka & Santa Fé v. United States (C. C.) 172 F. 194, 27 L. R. A. (N. S.) 756; United States v. Taylor (C. C.) 11 F. 470.

Judge Carland pointed out in Warren v. United States (C. C. A.) 250 F. 89, that: "Text-writers and courts speak generally, and what they say may be true as an abstract proposition of law, but wholly misleading as applied to any particular case."

In Horning v. District of Columbia, 254 U. S. 135, 41 S. Ct. 53, 65 L. Ed. 185, Justice Holmes said: "The judge cannot direct a verdict, it is true, and the jury has the power to bring in a verdict in the teeth of both law and facts. But the judge always has the right and duty to tell them what the law is upon this or that state of facts that may be found, and he can do the same none the less when the facts are agreed. If the facts are agreed, the judge may state that fact also, and when there is no dispute he may say so, although there has been no formal agreement. * * * If the defendant suffered any wrong, it was purely formal, since, as we have said, on the facts admitted there was no doubt of his guilt."

[3] Enlightening the understanding of a jury is an entirely different matter from influencing their judgment. A judge may not use undue influence—command or coerce a verdict of guilty. For a judge to command or coerce a verdict overcomes the will of the jurors by the weight of his authority, without convincing their judgment. Hall v. Hall, L. R. 1 P. & D. 481.

[4, 5] Throughout the trial the plaintiffs in error were accompanied by the presumption of innocence, with their guilt to be established beyond a reasonable doubt, and they were denying guilt of the charge, and disputing by cross-examination and counsel's representations their connection with the crime of conspiracy. They did not testify. They relied upon the claimed uncertain character of the government's witnesses and the alleged inconsistencies and contradiction of proof. No judge has the power or authority by indirection to visit punishment upon any one through forcing a jury's verdict. Punishment may be imposed only upon the verdict of a jury. Callan v. Wilson, 127 U. S. 540, 8 S. Ct. 1301, 32 L. Ed. 223. It was clear, from the language quoted in the supplementary charge, to which exception was taken, that there was indignation at the jury's failure to agree, and it was expressed in terms which were not consistent with the due regard for the duty of the jury to exercise its independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances. Starr v. United States, 153 U. S. 614, 14 S. Ct. 919, 38 L. Ed. 841; Hicks v. United States, 150 U. S. 442, 14 S. Ct. 144, 37 L. Ed. 1137. A jury must be left free to reach its own conclusions and to record its conscientious convictions. Shaffman v. United States (C. C. A.) 289 F. 370.

The cases all recognize that the surrender of the independent judgment of a jury may not be had by command or coercion. It is not enough to cure the error to conventionally say that it is the function of the jury to decide questions of fact. Pressure of whatever character, whether acting on the fears or hopes of the jury, if so exerted as to overbear their volition without convincing their judgment, is a species of restraint under which no valid judgment can be made to support a conviction. No force should be used or threatened, and carried to such a degree that the juror's discretion and judgment is overborne, resulting in either undue influence or coercion. A judge may advise, and he may persuade, but he may not command, unduly influence, or coerce. The supplementary instructions were effective, but a breach of the right of the plaintiffs in error to an impartial charge, free from animated argument and coercive entreaties. What occurred deprived the plaintiffs in error of that fair and impartial trial the law accords to them, no matter how convincing their guilt may appear.

Judgment reversed.