**UNITED STATES of America,
Appellee,**

v.

**Michael CARBONE and Louis Macchiarelli, Appellants.**

**No. 442, Docket 31045.**

United States Court of Appeals
Second Circuit.

Argued May 5, 1967.

Decided May 29, 1967.

Robert Kasanof, New York City (Albert J. Krieger, New York City), for appellants.

Elkan Abramowitz, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for Southern Dist. of New York, Robert G. Morvillo, Asst. U. S. Atty. of counsel), for appellee.

Before WATERMAN, FRIENDLY and FEINBERG, Circuit Judges.

FRIENDLY, Circuit Judge.

In this appeal from a narcotics conviction under 21 U.S.C. §§ 173–74, reversal is urged not on the usual grounds of insufficiency, entrapment or error in the charge, but solely on the basis of inconsistency in the verdict—and this despite the seemingly insurmountable hurdle of Mr. Justice Holmes' well-known opinion in Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). While the arguments here presented do credit to the ingenuity of counsel, we are constrained to reject them and affirm the convictions.

The indictment, in the District Court for the Southern District of New York, had two counts. The first charged that on or about July 6, 1964, Carbone and Macchiarelli along with one William Lowe [1] wilfully and knowingly received, concealed, sold and facilitated the transportation, concealment and sale of 3.600 grams of heroin imported and brought

1. Prior to trial the case against Lowe was severed; after the trial he pleaded guilty

to a violation of 26 U.S.C. §§ 4704(a) and 7237(a).

into the United States contrary to law, in violation of 21 U.S.C. §§ 173–74. The second count charged a conspiracy to violate the same sections, the overt acts being Lowe's meeting a man in the Bronx on July 6 and Carbone's and Macchiarelli's driving an automobile in the Bronx on July 7 and being seated in one there on July 8.

The Government's evidence was presented through "Cadillac Willie" Lowe, Narcotics Agent Peterson, and two surveilling agents. In summary their story was this: On July 6, 1964, as a result of Peterson's soliciting Lowe to sell heroin and asking for a sample, Lowe agreed to get in touch with his "people" and meet Peterson later that evening at a bar on East 139th Street in the Bronx. After a phone conversation with Macchiarelli, Lowe drove to the bar, parked his Cadillac in front of it, entered Peterson's already parked car for a short conversation, went into the bar and phoned Macchiarelli, and then returned to Peterson's car and told him the sample would shortly arrive. Soon afterward appellants drove up to the bar in an Oldsmobile, with Carbone at the wheel; Macchiarelli got out and placed a sample of heroin in Lowe's Cadillac. During Macchiarelli's absence Lowe entered the Oldsmobile and discussed the technique of sample-giving with Carbone; later he went into matters of price and delivery with both. Upon his return to Peterson's car Lowe pointed to appellants and told Peterson "these were his people." Peterson and Lowe then circled the block in Peterson's car, Lowe went to his Cadillac, retrieved the sample and asked Peterson to call him at the bar after testing it.[2] Peterson did this, expressing satisfaction with the quality but complaining about the price—$3600 for a quarter kilo. After a talk between Lowe and Macchiarelli, Peterson met Lowe the next evening at the bar and said he was $1500 short on the price but expected the money by midnight. Soon afterwards Carbone drove up and was informed of the slight hitch; he reported this to Macchiarelli at a "club" some blocks away. Around midnight the four met at the bar. Lowe informed appellants that Peterson now had the money and there was a protracted discussion about delivery methods, appellants insisting that this take place in Peterson's car. When Peterson refused, the transaction aborted.[3] After deliberating for nearly a full day the jury acquitted appellants on the substantive count relating to the sample but convicted them on the charge of conspiracy.

The sole claim on appeal concerns the alleged inconsistency of the verdict; we are told at one point in the brief that reversal on that score "is not only harmonious with, but required by the holding of Dunn v. United States, 284 U.S. 390 [52 S.Ct. 189] (1932), as adumbrated by Sealfon v. United States, 332 U.S. 575 [68 S.Ct. 237, 92 L.Ed. 180] (1948)" and at another that *Dunn* should "be overruled as unsound," a task somewhat beyond our powers even if we had the will. The first branch of the argument seizes on the *Dunn* opinion's recital of the Government's contention that acquittal on the possession and sale counts was not necessarily inconsistent with the conviction on the nuisance count, 284 U.S. at 392, 393, 52 S.Ct. at 190.[4] However, the opinion rested not on the ground of lack of inconsistency, but

---

2. It was stipulated that a chemist employed by the Government would testify that the sample contained 3.600 grams, partly heroin.

3. Appellants admitted their meetings with Lowe but insisted that all their conversations, including a highly suspicious one overheard by a surveilling agent, related to the purchase of transistor radios.

4. The Government also advances lack of inconsistency as an alternative contention here. It says that the jury, conceivably although improbably, could have found the possession necessary to convict appellants on the substantive count but because of an ambiguity in the charge may have failed to find that they either "received, or concealed, or sold, or in any manner facilitated the transportation, concealment, or sale of any narcotic." Such failure, it continues, is not inconsistent with a finding that the defendants conspired to sell a much larger quantity of heroin.

‸ple that "Consisten-
‸not necessary", 284 U.
.⸏t. at 190. This was un-
✔ the approving quotation of
✔ v. United States, 7 F.2d 59, 60
‸⸏. 1925), where in upholding a ver-
‸ct Judge Learned Hand had been at
pains to show that "a plain inconsisten-
cy" existed.[5]

The other branch of the argument
picks up the immediately succeeding sen-
tences in the *Dunn* opinion:

> "Each count in an indictment is re-
> garded as if it was a separate indict-
> ment. Latham v. The Queen, 5 Best
> & Smith, 635, 642, 643, Selvester v.
> United States, 170 U.S. 262 [18 S.Ct.
> 580, 42 L.Ed. 1029]. If separate in-
> dictments had been presented against
> the defendant for possession and for
> maintenance of a nuisance, and had
> been separately tried, the same evi-
> dence being offered in support of each,
> an acquittal on one could not be plead-
> ed as *res judicata* of the other.
> Where the offenses are separately
> charged in the counts of a single in-
> dictment the same rule must hold."

But, says counsel, where separate indict-
ments are separately tried, an acquittal
on one *can* be pleaded as *res judicata* of
issues necessarily determined, as was
later held in Sealfon in accord with Mr.
Justice Holmes' earlier decision in Unit-
ed States v. Oppenheimer, 242 U.S. 85,
37 S.Ct. 68, 61 L.Ed. 161 (1916). Hence
if "in the counts of a single indictment
the same rule must hold," the acquittal
on the substantive count would be con-
clusive with respect to the conspiracy
count and the verdict can be sustained

only if we should uphold the Govern-
ment's argument that there is no fatal
inconsistency here, see fn. 4.

■ The contention has the difficulty
that, as was intimated in United States
v. Maybury, 274 F.2d 899, 905 (2 Cir.
1960), it would necessarily have led Mr.
Justice Holmes into a position precisely
the opposite of what he took in *Dunn*.
The escape from the dilemma lies in own-
ing that in this, his last opinion, written
in his ninety-first year,[6] the Justice was
mistaken in identifying the two situa-
tions, but that the argument was in no
way essential to his conclusion. The
very fact that the jury may have acquit-
ted of one or more counts in a multi-
count indictment because of a belief that
the counts on which it was convicted
will provide sufficient punishment, see
Steckler v. United States, supra, 7 F.2d
at 60, forbids allowing the acquittal to
upset or even to affect the simultaneous
conviction. We have repeatedly so held,
e. g., in United States v. Coplon, 185 F.2d
629, 633, 28 A.L.R.2d 1041 (2 Cir. 1950),
cert. denied, 342 U.S. 920, 72 S.Ct. 362,
96 L.Ed. 688 (1952), United States v.
Marcone, 275 F.2d 205 (2 Cir.), cert.
denied, 362 U.S. 963, 80 S.Ct. 879, 4
L.Ed.2d 877 (1960), and United States v.
King, 373 F.2d 813, 815 (2 Cir. 1967).
Indeed, if the rule were otherwise, the
Government would be entitled to have the
jury warned that an acquittal on some
counts might undermine a guilty verdict
on others—almost the opposite of the
standard instruction, which is obviously
beneficial to criminal defendants, and
which the judge gave here without ob-
jection. It is true, as both Judge Hand

---

5. Note also Mr. Justice Holmes' reference
to his own opinion in Horning v. District
of Columbia, 254 U.S. 135, 41 S.Ct. 53,
65 L.Ed. 185 (1920), relevant only for its
reference to the jury's "power to bring
in a verdict in the teeth of both law and
facts." 254 U.S. at 138, 41 S.Ct. at 54.

6. *Dunn* was decided on January 11, 1932;
Holmes' letter of resignation was sent the
following day, 284 U.S. vii. A letter of
January 3, 1932, attests that the opinion
was written at a time of failing powers:
"I have not been very well and I find

it difficult to write; difficult physically
and mentally. I hope to get back to
normal but at present life is hard. We
begin our sittings again on Monday. I
have but one opinion to deliver, another
being held up for tinkering to meet a
long dissent from Butler—agreed to by
no one else I believe." The Holmes-
Einstein Letters 335 (1964).

The latter opinion was quite obviously
*Dunn*; one wonders whether the sentenc-
es we have just examined constituted the
"tinkering."

and Mr. Justice Holmes recognized, 7 F.2d at 60, 284 U.S. at 394, 52 S.Ct. 189, that allowing inconsistent verdicts in criminal trials runs the risk that an occasional conviction may have been the result of compromise. But the advantage of leaving the jury free to exercise its historic power of lenity has been correctly thought to outweigh that danger. See United States v. Maybury, *supra*, 274 F.2d at 902–903.

Affirmed.