Evelyne SANDLIN, Plaintiff,

v.

Everett PEARSALL et al., Defendants.

No. CIV-4-75-46.

United States District Court,
E. D. Tennessee,
Winchester Division.

Nov. 17, 1976.

Quinton F. Horton, McMinnville, Tenn. and Sidney W. Gilreath, Knoxville, Tenn., for plaintiff.

Clinton Swafford, Winchester, Tenn., J. Stanley Rogers, Manchester, Tenn., Bernard K. Smith and James W. Dempster, McMinnville, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for monetary damages for deprivation of the plaintiff's civil rights. She claimed that she suffered serious damage to her eyesight from the use by the defendants Messrs. Rowland and Mathias upon her person, while she was in custody after an arrest, of unreasonable force, and that they failed to provide her with timely medical attention when she was in obvious need thereof. The jury found for the de-

fendants, and the plaintiff moved timely for a new trial. Rules 59(a)(1), (2), Federal Rules of Civil Procedure. The gravamen of such motion is that the verdict returned by the jury is contrary to the weight of the evidence and the applicable law.

Mrs. Sandlin, evidently an obnoxious drunkard of disgusting cultural standards, was arrested on the afternoon of January 3, 1974 while she was admittedly intoxicated. What transpired afterward is without substantial dispute. She was taken to jail and incarcerated, alone in a cell behind a solid iron door with only a comparatively small aperture in it. She began immediately after she was locked-up to kick upon the door, curse her custodians, and generally disturb the peace of the jail. To inspire her to behave herself, the defendant Mr. Rowland admittedly " * * * sprayed mace across the cell door in a sweeping motion. * * *" Mrs. Sandlin testified, without contradiction, that mace from such spray gun struck and penetrated into her eyes. It is inferable reasonably that she complained of the effect of the mace within the hearing of Mr. Rowland, because he admittedly called-out to her as he left the cells-portion of the jail: "If it bothers you, wash your face and you'll be all right!" Despite his admitted knowledge of Mrs. Sandlin's problem, although he "checked on her several times" during the ensuing evening, Mr. Rowland failed to ascertain that Mrs. Sandlin obviously was in need of medical attention during his entire shift.

The plaintiff was taken to City Court from the jail late the following afternoon. When the presiding judge observed her condition, even at that late time, he released Mrs. Sandlin for a period of two weeks.

The day after (Saturday), Mrs. Sandlin consulted a local physician who arranged for her to be examined by an ophthalmologist in another city. She was able to arrange the necessary transportation late that evening and was examined by Dr. John T. Cunningham about 10:00 o'clock, p. m. This physician found at that time an inflammatory reaction from the inside of Mrs. Sandlin's eyes with a definite reduction in vision in her right eye. He reexamined and treated Mrs. Sandlin several times thereafter and expressed the opinion that she had suffered, either from the toxic reaction of the mace or the force of the stream of mace sprayed into her eyes, a permanent loss of vision.

This Court submits issues to juries for their collective determination and customarily does not reweigh the evidence and set aside the verdict returned, because he feels a different result would have been more reasonable under the facts and the law. See *ergo., United States ex rel. T. V. A. v. 544 Acres of Land, Etc.,* D.C.Tenn. (1969), 309 F.Supp. 46, 48[7]. Contrary to the state rule, a federal judge presiding in Tennessee over a civil action does not sit as the seventh juror. *Sitton v. Clements,* D.C. Tenn. (1966), 257 F.Supp. 63, 67[2], affirmed C.A.6th (1967), 385 F.2d 869; *Wertham Bag Corp. v. Agnew,* C.A.6th (1953), 202 F.2d 119, 122[3].

Notwithstanding: " * * * The trial judge in the federal system has * * * discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence. * * *" *Byrd v. Blue Ridge Rural Elec. Coop.* (1958), 356 U.S. 525, 540, 78 S.Ct. 893, 902, 2 L.Ed.2d 953, 964, rehearing denied (1958), 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375; *accord: Trice v. Commercial Union Assurance Company* (opinion per Frank W. Wilson, District Judge), C.A.6th (1964), 334 F.2d 673, 677[6], certiorari denied (1965), 380 U.S. 915, 85 S.Ct. 895, 13 L.Ed.2d 801. In so doing, however, " * * * where no undesirable or pernicious element has occurred or been introduced into the trial and the trial judge nonetheless grants a new trial on the grounds that the verdict [is] against the weight of the evidence, the trial judge * * * has, to some extent at least, substituted his judgment of the facts and the credibility of the witnesses for that of the jury. Such an action effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts. * * * *"

*Lind v. Schenley Industries, Inc.,* C.A.3d (1960), 278 F.2d 79, 90[7].

In exercising its discretion on this basis, the Court must first separate jury trials in civil from criminal actions. In criminal cases, " * * * the jury has the power [or technical right, if it can be called so] to bring in a verdict in the teeth of both law and facts. * * * " *Horning v. District of Columbia* (1920), 254 U.S. 135, 138, 41 S.Ct. 53, 54, 65 L.Ed. 185, 186–187 (see headnote 3); see also *United States v. Moylan,* C.A.4th (1969), 417 F.2d 1002, 1006[3]. In civil actions, however, if, after evaluating all the significant evidence, the trial judge is of the opinion, in the exercise of his own best judgment, that the jury has so disregarded the credible evidence that its verdict is against the clear weight thereof, the duty arises for the trial judge to check the jury's power to render a final and binding verdict by setting aside the verdict and granting a new trial, to the end that a miscarriage of justice does not result. See *Duncan v. Duncan,* C.A.6th (1967), 377 F.2d 49, 52[1], [2], certiorari denied *sub nom. Fain v. Duncan* (1967), 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260; *cf. also Zegan v. Central Railroad Company of New Jersey,* C.A.3d (1961), 266 F.2d 101, 104[5].

The perplexing problem is the test which should be applied in making such an evaluation. The Supreme Court, in reviewing the test which would be applied in considering whether to reverse a finding of fact in a nonjury action by a trial court under the "clearly erroneous rule," declared: " * * * A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. * * * " *United States v. United States Gypsum Co.* (1948), 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, 766 (headnote 7). A balancing of this type would appear to this Court to serve appropriately as the test in determining also whether a jury verdict should be set aside as against the clear weight of the evidence and, therefore, contrary to " * * * the right and justice of the case. * * * " *Reid v. Maryland Casualty Co.,* C.C.A.5th (1933), 63 F.2d 10, 12.

This Court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed by the jury in finding for the defendant Mr. Rowland and against the plaintiff Mrs. Sandlin. Mr. Rowland did not deny Mrs. Sandlin's claim that he sprayed mace toward her; his subsequent statements require the inference that he was aware that this toxic substance had entered her eye(s). Mrs. Sandlin was alone in a jail cell at the time. The mace could not have originated from another source. Although she was unruly, it is patent that such action by Mr. Rowland was not required reasonably to retain her in custody.

Everyone who saw Mrs. Sandlin while she remained in that custody thereafter testified that she appeared in need of medical attention. The medical evidence demonstrated that mace, or some similar toxic substance, had been introduced into her eyes; and that she required medical attention long before she obtained it. It is incredible that six jurors ignored this virtually undisputed evidence and failed to find that Mr. Rowland had deprived Mrs. Sandlin of the process of law which our Constitution asserts she was due.

It might be said, on the other hand, that there is some evidence to support the jury's finding for the defendant Mr. Mathias and against Mrs. Sandlin. In any event, based upon the compelling hesitancy of this Court to overturn a jury verdict, it cannot be said with similar assurance on the entire evidence that the Court is left with the definite and firm conviction that a mistake was made by the jury with reference to the claim against Mr. Mathias.

There remains the question, whether a new trial should be granted to Mrs. Sandlin as to the dismissed defendant Mr. Everett Pearsall predicated upon his responsibility for the actions of Mr. Rowland, his deputy. The laws of Tennessee impose upon the sheriffs of its counties the duty to " * * * take charge and custody of the jail of his

county, and of the prisoners therein, * * * " T.C.A. § 8–810(3), but relieves them from liability " * * * for any wrongs, injuries, losses, damages, or expenses incurred as a result of any act of failure to act on the part of any deputy appointed by said sheriff, whether said deputy is acting by virtue of office, under color of office, or otherwise." T.C.A. § 8–832.

The Tennessee statutes cited and quoted from do not provide that its sheriffs shall be liable for the negligence and misconduct of deputies sheriff acting as jailers as in *Hesselgesser v. Reilly,* C.A. 9th (1971), 440 F.2d 901 (relating to statutes of the state of Washington which do so provide). Thus, if at all, Mr. Pearsall could be liable for Mr. Rowland's civil rights violations while serving as a jailer only under the doctrine of respondeat superior. Although T.C.A. § 8–832 does not immunize a Tennessee sheriff and the surety on his official bond from actions by a sheriff, himself, in violation of the federal civil rights statutes, *Moore v. Buckles,* D.C.Tenn. (1975), 404 F.Supp. 1382, 1383[1], the doctrine of respondeat superior does not apply where monetary damages are sought against such a sheriff because of the conduct of his deputy, *ibid.,* 404 F.Supp. at 1383–1384[3]; *cf.* also *Fults v. Pearsall,* D.C.Tenn. (1975), 408 F.Supp. 1164, 1166[1].[1] Thus, Mr. Pearsall, who had no personal involvement in Mr. Rowland's conduct toward Mrs. Sandlin or other involvement personally herein, was dismissed earlier as a defendant properly.

The motion of the plaintiff, therefore, hereby is GRANTED as to her claim against the defendant Mr. Rowland, and it hereby is otherwise DENIED. The plaintiff Mrs. Evelyne Sandlin hereby is GRANTED a new trial against the defendant Mr. Gerald Rowland[2] to commence on Friday, January 28, 1977 at 9:00 o'clock in the forenoon.

[1]. This Court's decision in *Fults, supra,* was rendered some eight months prior to its subsequent decision in *Moore, supra.* The implication of *Fults* is that, under Tennessee law, its sheriffs are not liable for the negligence and misconduct of his deputies; whereas, in *Moore* the Court confronted for the first time the question of whether Tennessee law insulates a Tennessee sheriff against liability in civil rights actions.

[2]. The title hereof hereby is AMENDED, so as to reflect that Mr. Rowland is the defendant.