**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JUAN A. MERCED,
          *Petitioner-Appellant,*

v.

JOSEPH L. MCGRATH, Warden,
Pelican Bay Prison,
          *Respondent-Appellee.*

No. 04-15560

D.C. No.
CV-03-01904-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
February 14, 2005—San Francisco, California

Filed October 18, 2005

Before: Dorothy W. Nelson, William A. Fletcher, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge D.W. Nelson

## COUNSEL

Philip M. Brooks, Berkeley, California, for the petitioner-appellant.

Bill Lockyer (on the briefs), Attorney General of the State of California, Gerald A. Engler (on the briefs), Senior Assistant Attorney General for the State of California, Morris Beatus (on the briefs), Deputy Attorney General for the State of California, and Peggy S. Ruffra (argued), Supervising Deputy Attorney General for the State of California, San Francisco, California, for the respondent-appellee.

## OPINION

D.W. NELSON, Circuit Judge:

Juan Merced, a California state prisoner, appeals the district court's denial of his petition for habeas corpus. In his petition, Merced makes several assignments of error, only one of which we discuss here: whether the trial court violated Merced's constitutional rights when it excused a prospective juror based on his belief in exercising the power of jury nullifica-

tion in appropriate circumstances. We affirm the district court's denial of the habeas petition with respect to this assignment of error.[1]

# I.

Merced's first trial in February and March 1999 ended with a hung jury. Merced was retried in June 1999 and convicted of attempted premeditated murder of a peace officer involving the personal use of a firearm, under Cal. Pen. Code §§ 187, 664, 12022.5, and of being a convicted felon in possession of a firearm, under Cal. Pen. Code § 12021. After finding that the defendant had eight prior felony convictions, the trial court sentenced Merced to state prison for a total term of sixty-five years to life.

The California Court of Appeal, in an opinion published only with respect to the claim of error relating to the removal of a juror based upon his belief in the concept of jury nullification, affirmed the trial court in December 2001. *People v. Merced*, 114 Cal. Rptr. 2d 781, 782 (Ct. App. 2001). Merced then appealed to the California Supreme Court, which denied his petition for review. After exhausting his appeals in state court, Merced brought a petition for habeas corpus in the federal district court. The district court denied the petition on February 10, 2004, and Merced timely filed this appeal.

At trial, the jury questionnaire contained an open-ended question, asking jurors to volunteer anything else "that [they] feel that [they] should mention at this time that might affect [their] ability to be fair and impartial juror[s] *in this case*."

---

[1]In a separately filed memorandum disposition, we affirm the district court's denial of Merced's other assignments of error: 1) that the trial court committed three instructional errors that violated Merced's due process rights; 2) that the trial court constitutionally erred by permitting the prosecution to comment upon the failure of the defense to call witnesses; and 3) that the trial court erred by not striking Merced's prior convictions as constitutionally invalid.

(emphasis added). Prospective alternate juror Andrew B. answered as follows: "I recognize and believe in jury nullification where appropriate." After reviewing the questionnaires, the trial judge called Mr. B. into the box and the following colloquy ensued:

> THE COURT: Mr. B____, . . . I appreciate your candor, particularly No. 64 about jury nullification. I mean, that's your right. I have no problem with that. My question is this: If you are selected on this jury, and if I instructed you as to the law that implies [sic] in the state of California and it went against your conscience for whatever reason, is it reasonable for me to assume that you would not follow the law as I dictate it to you? [¶] MR. B____: It's reasonable for you to assume that. [¶] THE COURT: I'm going to excuse you then Mr. B____. Thank you very much.

*Merced*, 114 Cal. Rptr. 2d at 784.

## II.

This court reviews the district court's denial of a 28 U.S.C. § 2254 habeas petition de novo. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996, a habeas petition from a person in custody pursuant to a state court conviction will not be granted unless the decision "was contrary to, or involved an unreasonable application of" established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). The federal court must look to the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision. *LaJoie v. Thompson*, 217 F.3d 663, 669 n.7 (9th Cir. 2000).

## III.

[1] A juror's ability to acquit "in the teeth of both law and facts," *Horning v. District of Columbia*, 254 U.S. 135, 138

(1920), is a well-established power that defense counsel correctly observed "ha[s] been with us since Common Law England." *Merced*, 114 Cal. Rptr. 2d at 784; *see also Bushell's Case*, 124 Eng. Rep. 1006 (C.P. 1670) (releasing jury foreman Bushell, who was arrested for voting to acquit William Penn of unlawful assembly against the weight of the evidence and the requirements of the law). Importantly, while jurors have the power to nullify a verdict, they have no right to do so. *See Standefer v. United States*, 447 U.S. 10, 22-23 (1980) (citations omitted). If jurors had a *right* to nullify, then a court would have a correlative *duty* to safeguard their ability to exercise this right. *See* Wesley Newcomb Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L.J. 16, 32 (1913) (describing a legal taxonomy in which a duty is the correlate of a right). But courts manifestly do not have a duty to ensure a jury's free exercise of this power. *See, e.g.*, *United States v. Powell*, 955 F.2d 1206, 1213 (9th Cir. 1992) (holding that courts have no duty to provide nullification instructions to juries); *United States v. Dougherty*, 473 F.2d 1113, 1136-37 (D.C. Cir. 1972) (same). In fact, "it is the duty of juries in criminal cases to take the law from the court, and apply that law to the facts as they find them to be from the evidence." *Sparf v. United States*, 156 U.S. 51, 102 (1895).

   **[2]** The power to nullify is reenforced by a jury's freedom from recrimination or sanction for exercising this power after the verdict has been reached. *See United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997) ("[I]n addition to the courts' duty to safeguard the secrecy of the jury deliberation room . . . the several rules protecting the unassailability of jury verdicts of acquittal . . . serve to 'permit [ ] juries to acquit out of compassion or compromise or because of their assumption of a power which they had no right to exercise, but to which they were disposed through lenity.' ") (quoting *Standefer*, 447 U.S. at 22). Notwithstanding the unassailability of jury verdicts of acquittal,

> [i]nasmuch as no juror has a right to engage in nullification—and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court—trial courts have the duty to forestall or prevent such conduct, whether by firm instruction or admonition or, where it does not interfere with guaranteed rights or the need to protect the secrecy of jury deliberations, . . . by dismissal of an offending juror from the venire or the jury.

*Id.* at 616.

## IV.

With this backdrop in place, we turn to a consideration of the following question: was the California Court of Appeal's decision contrary to or an unreasonable application of the appropriate federal standard for the removal of a juror for cause? The court of appeal, in affirming the trial court, relied upon *People v. Holt*, 15 Cal.4th 619 (Cal. 1997), to conclude that "a prospective juror may be excused if the juror's voir dire responses convey a 'definite impression' that the juror's views 'would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Merced*, 114 Cal. Rptr. 2d at 784 (quoting *Holt*, 15 Cal.4th at 650-51). In articulating this standard, *Holt* relied upon the Supreme Court's holding in *Wainwright v. Witt*, 469 U.S. 412, 424, 426 (1985). We hold that the court of appeal's decision neither contravened nor unreasonably applied clearly established federal law.

*Witt* dealt with the removal for cause of a prospective juror in a capital case because of her personal beliefs in opposition to the death penalty. *Witt* is no less applicable here, even though this is not a capital case. As Chief Justice Rehnquist, writing for the majority in *Witt*, made clear:

[T]here is nothing talismanic about juror exclusion under *Witherspoon* [*v. Illinois*, 391 U.S. 510 (1968)]**²** merely because it involves capital sentencing juries. *Witherspoon* is not grounded in the Eighth Amendment's prohibition against cruel and unusual punishment, but in the Sixth Amendment. Here, as elsewhere, the quest is for jurors who will conscientiously apply the law and find the facts.

*Witt*, 469 U.S. at 423.

**[3]** A juror's refusal to inflict the death penalty because of the personal demands of conscience over the firm dictates of law is, of course, an example of juror nullification. *Witt* clarified that the standard for removal for cause in *Witherspoon* should not be understood to require a finding that the juror would "automatically" nullify — i.e., vote against the death penalty no matter the facts of the case. *Id*. at 422. Rather, "whether or not a venireman *might* vote for death under certain *personal* standards, the State still may properly challenge that venireman if he refuses to follow the statutory scheme and truthfully answer the questions put by the trial judge." *Id*. But if the case before the venireman were one in which his or her personal standards happened to coincide with the requirements of the law, the venireman could not be properly excused for cause.

Importantly, "it cannot be assumed that a juror who describes himself as having 'conscientious or religious scruples' against the infliction of the death penalty or against its infliction 'in a proper case' thereby affirmed that he could never vote in favor of it or that he would not consider doing so in the case before him." *Witherspoon*, 391 U.S. at 515 n.9 (citation omitted). Similarly, it cannot be assumed that a prospective juror who describes himself as believing in jury nul-

---

**²***Witherspoon* was a case whose standard for removing "conscientious objector" jurors in capital cases *Witt* sought to clarify.

lification "where appropriate" thereby affirmed that he could not refrain from doing so in the case before him.

**[4]** However, the fact that Mr. B. volunteered this information in response to a question about his ability to remain impartial "in this case" reasonably gave rise to a definite impression of serious potential juror bias. Notwithstanding the trial judge's own inadequate justification — "[t]he [mere] fact that he believes in jury nullification is enough for me as a challenge for cause" — it was reasonable for the court of appeal to find that the challenge was proper in this case. We disagree with the court of appeal that a trial judge is never required to ask a potentially nullifying prospective juror further questions about the circumstances under which he would nullify — including questions about the juror's attitudes toward the relevant statutory scheme under which the defendant was charged — before excusing him for cause. *See Merced*, 114 Cal. Rptr. 2d at 782, 786. We note, however, that it is the state court's decision, as opposed to its reasoning, that is judged under the "unreasonable application" standard. *See, e.g.*, *Hernandez v. Small*, 282 F.3d 1132, 1140 (9th Cir. 2002) (observing that in habeas proceedings, "we are determining the reasonableness of the state courts' 'decision,' not grading their papers") (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2d Cir. 2001)); *id.* ("the intricacies of the state court's analysis need not concern us; what matters is whether the *decision* the court reached was contrary to controlling federal law"). We therefore conclude that the California Court of Appeal's decision neither contravened nor unreasonably applied clearly established federal law.

## V.

The extent to which a trial court should question a prospective juror who has expressed a willingness to follow his or her conscience, come what may, depends upon the circumstances. In this case, the trial judge never asked Mr. B. to explain what, if any, particular circumstances he considered "appro-

priate" for jury nullification. Rather, the judge simply posed a hypothetical question, the answer to which revealed no more information about Mr. B.'s likelihood to nullify in the case before him than Mr. B.'s questionnaire did. Notwithstanding the trial judge's failure to glean more information about whether Mr. B. was inclined to follow the dictates of his own conscience rather than those of the law in the particular case at hand, the fact that Mr. B. *volunteered* his belief in jury nullification in response to a question about his ability to be an impartial juror "in this case" was enough to create a definite impression of potential bias.

**[5]** In other contexts of potential nullification, as in the death penalty context, judges often carefully explore a prospective juror's possible willingness to nullify a verdict before excusing him or her. *See, e.g., Holt*, 15 Cal.4th at 651-52. On the facts of the present case, the trial judge was not obligated to ask Mr. B. to flesh out in greater detail his volunteered remark about his belief in jury nullification for the reasons already discussed. But the judge was mistaken in assuming that the mere fact of Mr. B.'s general belief in jury nullification was enough to justify excusing him for cause. Suppose the trial judge had independent knowledge of Mr. B.'s belief in jury nullification — say, because he had written an article on the subject or because he had appeared before the same judge on a previous venire panel and had disclosed his belief then. If Mr. B. had not said anything that would have indicated his inability to be fair and impartial in this case, the judge could not then have pointed to his independent knowledge of Mr. B.'s belief in jury nullification "where appropriate" as a legitimate reason for excusing him for cause. *Witt*'s requirement of a "definite impression" of juror bias demands more.

## VI.

## CONCLUSION

**[6]** Because the trial judge reasonably had a definite impression that the prospective juror's views "would prevent

or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath," *Witt*, 469 U.S. at 420 (quoting *Adams v. Texas*, 448 U.S. 38, 45 (1980), we affirm the district court's denial of Merced's petition for habeas corpus.

**AFFIRMED.**