CHRISTENSEN, Chief District Judge,
concurring in part and dissenting in part:
Although I concur in most of the majority opinion, I dissent from the portion of the majority opinion affirming the dismissal of Juror 7 in the second trial involving defendants Christensen and Pellicano. Majority op. at 806-15. The district court *825 erred by dismissing Juror 7 based on a determination that Juror 7 was not credible and had lied to the court on an unrelated issue concerning his views on federal tax laws.
Shortly after one hour of deliberations following a 21-day trial, the district court received a confusing note in the handwriting of at least two, and perhaps three of the jurors, which led the court into protracted and tangential interviews of first, Juror 7, followed by interviews of Jurors 1 (the foreperson), 9, 3, 2, and 11, focused on the issue of whether Juror 7 had lied to the district court. At no point during the interview with Juror 7 did the court ask what would have been the most appropriate question, which was whether he could follow the law as instructed by the court. I would reverse because Juror 7’s statements regarding his views on the evidence demonstrate “a reasonable possibility that the impetus for [his] dismissal stem[med] from [his] views on the merits of the case.” United States v. Symington, 195 F.3d 1080, 1087 (9th Cir. 1999). No other juror refuted Juror 7’s statements that he was simply unpersuaded by the evidence, and these statements are far more relevant to the proper inquiry than his purported views on federal tax law.
It is disconcerting to a trial judge to receive a note from a juror, or jurors, in the course of the jury’s deliberations following a lengthy trial, other than one advising that the jury has reached a verdict. A juror note requires the - trial judge to consult with counsel and to craft a narrow and concise response. When taking the rare act of dismissing a juror, the trial court must safeguard the secrecy of jury deliberations, and steadfastly protect against the dismissal of a juror based on the juror’s doubts about the guilt of a criminal defendant. It is only when the juror discloses an intent to purposefully disregard the court’s instructions on the law, or commits some other recognized form of misconduct, that the juror must be dismissed. If the evidence in the record supports the possibility that the juror’s views on the merits of the case are motivated by doubts regarding the guilt of the defendant, rather than a clearly manifested intent to disregard and nullify the law, then that juror must not be dismissed. United States v. Thomas, 116 F.3d 606, 608 (2d Cir. 1997). To do otherwise violates a defendant’s Sixth Amendment right to a unanimous jury verdict. Symington, 195 F.3d at 1085. In this case, when interviewed by the district court, Juror 7 was never asked whether he could follow the court’s instructions on the law or engage in deliberations. And, in fact, during the course of his interview, Juror 7 indicated that he had concerns regarding the strength of the government’s case against the defendants. It was clear error to dismiss Juror 7.
Federal Rule of Criminal Procedure 23(b) provides that a juror may be dismissed during deliberations for good cause. “Good cause” includes juror illness, juror misconduct, juror nullification, an inability to communicate, or an inability to be fair and impartial, among other reasons. See Symington, 195 F.3d at 1085; Merced v. McGrath, 426 F.3d 1076, 1079-81 (9th Cir. 2005).
When a jury seeks the removal of one juror, the court faces the difficult task of determining whether the requested removal stems from a disagreement on the merits of the case. Symington, 195 F.3d at 1086. The court’s investigative powers in this circumstance are limited in order to maintain the secrecy of jury deliberations and avoid jeopardizing “the integrity of the deliberative process.” Id. The court’s inquiry must not expose the content of jury deliberations. Id. Recognizing this dilem *826 ma, this Court has held that “if the record evidence discloses any reasonable possibility that the impetus for a juror’s dismissal stems from the juror’s views on the merits of the case, the court must not dismiss the juror.” Id. The trial judge must either send the jury back to continue deliberating or declare a mistrial. Id.
In such circumstances, a court’s circumscribed inquiry, as the district court here concluded, should focus on “whether [the juror] is willing to follow the law and whether he is willing to deliberate.” The district court in this case, however, strayed from this focus during its interviews, which included interviews of Juror 7 and five other jurors. Importantly, in interviewing Juror 7, the district court never asked whether Juror 7 could follow the law or whether he was willing to deliberate — it only asked for confirmation of the accusations in the jury notes. Moreover, during the court’s questioning of Juror 7, he denied making the statements attributed to him in the jury notes as follows:
• “Well, I didn’t say if the Government can wiretap, then he can, whoever ‘he’ referred to. He wrote that note probably based on anger and emotions towards me.”
• “He was angry because I disagreed with the majority of the jurors.”
• When specifically asked if he said that he did not agree with wiretapping law, Juror 7 responded “No, I didn’t say that. I said that I cannot agree to judge my decision on circumstantial evidence.”
• When asked whether he said the law did not require him to pay federal taxes, he said “I don’t recall that. At all. That doesn’t make sense to me. I couldn’t answer to specific questions of wiretapping with the federal taxes.... I didn’t say anything about taxes.”
At this point, based on Juror 7’s responses to the district court’s questions and the various notes that precipitated the questioning, it was apparent that Juror 7 had problems with the strength of the government’s case against the defendants and that he “disagreed with the majority of the jurors” about the merits of the government’s case. Symington is clear that under such circumstances, the district court should have instructed Juror 7 to return to the jury room and continue with deliberations, or else simply declare a mistrial. Symington, 195 F.3d at 1086. Because deliberations were at such an early stage, where the likelihood for miseommu-nication between jurors was at its highest and the opportunity for consensus building was at its lowest, instructing the jury to continue with deliberations was the appropriate course, if not the required one.
The district court should not have proceeded to interview Jurors 1, 9, 3, 2 and 11. This Court has emphasized that “juror privacy is a prerequisite of free debate, without which the decisionmaking process would be crippled.” Id. Accordingly, this Court has cautioned that a trial judge’s limited role in investigating alleged juror misconduct “must not compromise the secrecy of jury deliberations.” Id. The district court’s interviews here, of five additional jurors, certainly compromised the secrecy of the jury deliberations. But, to the extent the district court here felt it was necessary to inquire of the other jurors, then the focus of that inquiry should have been extremely narrow and directed to whether Juror 7 could follow the law and whether he was willing to deliberate. Instead, the district court’s extensive inquiries of the five additional jurors focused on whether Juror 7 had truthfully answered the court’s questions about his alleged statements regarding the federal tax law during deliberations. This turned what should have been a narrow investigation *827 into a sideshow. Moreover, the record makes clear that the questioned jurors’ answers to the court’s inquiries were rooted, at least potentially, in their disagreement with Juror 7 about his assessment of the merits of the government’s case.
The majority discusses juror nullification law at length, but fails to point to any solid evidence in the record demonstrating that Juror 7 was engaging in nullification. The district court had every opportunity to ask Juror 7 if he was willing to follow the law, despite any disagreement with it, but that did not occur. While a direct question as to whether a juror is willing to follow the law is not always dispositive, Murphy v. Florida, 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975), it is a necessary starting point before a judge may take the rare step of dismissing a juror at the bidding of other jurors who disagree with the subject juror about the merits of the case. To overcome the jury system’s “crucial assumption,” Parker v. Randolph, 442 U.S. 62, 73, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979) (Rehnquist, J.), that a qualified juror will follow the law, the judge must have some solid evidence of juror nullification.[1] The district court here failed to ask the most relevant question and thus failed to obtain any direct evidence of jury nullification. Instead, the district court determined that Juror 7 would not follow the law because it determined that he was “not credible”: “Juror No. 7 is not credible and that is why I reach my conclusion about his refusal to follow the law.” This Court’s precedent does not allow for juror dismissal based on a vague finding about a juror’s general “credibility.” That obvious error alone is worthy of reversal.
The district court likewise concluded, “Juror No. 7 has lied to the Court. That is an independent grounds for excusing him.” This finding also constitutes clear error because, as the court acknowledged in denying a motion for a new trial, “even an intentionally dishonest answer [during voir dire] is not fatal, so long as the falsehood does not bespeak a lack of impartiality.” Dyer v. Calderon, 151 F.3d 970, 973 (9th Cir. 1998). The majority cites United States v. Vartanian, 476 F.3d 1095, 1098-99 (9th Cir. 2007) for the proposition that a district court may properly dismiss a juror based on its determination that a juror had been untruthful about his or her potential biases. I do not read Vartanian to stand for this broad proposition of law. The juror' in Vartanian was properly dismissed for “her misconduct outside of the jury deliberation room,” including multiple improper contacts with “members of the defendant’s family, defense counsel, and apparently even the defendant himself,” which, when questioned about by the trial judge, she lied about. Vartanian, 476 F.3d at 1098-99. Dishonesty during voir dire is only relevant when it “bespeak[s] a lack of impartiality.” Dyer, 151 F.3d at 973. Here, even assuming Juror 7 lied about the federal tax statement, rather than failing to recall saying it as he stated during the questioning by the court, this falsehood does not necessarily bespeak a lack of impartiality. His view on federal tax law is not indicative of whether he would follow the wiretapping law as instructed by the court, nor does it indicate that Juror 7 was anti-government.
Even considering the court’s conclusion that Juror 7 was not credible, the record supports a reasonable possibility that Juror 7 was a holdout ganged up on by his fellow jurors who disagreed with his views regarding the sufficiency of the evidence. *828 When the court asked Juror 7 whether he made the statements attributed to him by the jury notes, he denied making them, and said that the other jurors were angry with him because he disagreed with them. He then stated that he could not base his decision on circumstantial evidence. These answers raised a reasonable possibility that the impetus for the other jurors to have him dismissed stemmed from his views on the merits of the case. No statements from the other jurors refute Juror 7’s statements. Indeed, the record supports the assertion. At one point, Juror 1 (the foreperson) began discussing how his views on the evidence differed with Juror 7’s: “[Juror 7] stated that if the federal government charges someone, they’re innocent, and he was — won’t accept — I can’t talk about evidence.” Juror 1 also volunteered “[w]e are all unanimous on it in there. We have taken a vote....”[2] The jury notes similarly indicated that the other jurors disagreed with Juror 7’s assessment of the merits of the ease. One note specifically alleged that Juror 7 was “ANTI-government,” and another note indicated that problems stemmed from Juror 7’s “need” for more evidence. In light of all of this, the majority’s conclusion that “[a]ll of the concerns expressed by the other jurors related to the views of Juror 7 on the law, not the evidence” is not persuasive. Ultimately, as in Symington, the evidence does not “support any high degree of certainty as to the underlying motive” for the jury’s request to dismiss Juror 7, Symington, 195 F.3d at 1088, n. 7, but it is under just such uncertain circumstances that dismissal of a juror is improper.
Contrary to the majority’s assertion, the speed with which the jury sent out its first note is certainly not clear evidence that Juror 7 was engaging in nullification. It is just as likely that Juror 7 was adamantly stating his view that the government’s evidence was insufficient for a conviction as it is that he was expressing an unwillingness to follow the law, or that Juror 7 was simply taken to flights of hyperbole when encountering hostility to his skepticism about the merits of the government’s case. Likewise, if we are to engage in speculation, it is certainly possible that a vocal few were impatient after a long trial and were trying to force a conviction without a full discussion of the evidence. As this Court has pointed out previously, it is not for the judge to inquire or speculate what is going on in the jury room. That is why it was so important for the district court to ask Juror 7 if he was willing to follow the wiretapping law and willing to engage in deliberations with his fellow jurors.
Without that key information, this Court is forced to make baseless assumptions founded on things like the length of deliberations and the fact that the jury convicted once Juror 7 was replaced. I do not believe such conjecture is appropriate when a simple alternative exists — asking the juror if he or she will deliberate and follow the law. The district court’s failure to do so here violated the Defendants’ Sixth Amendment right to a unanimous and impartial jury. This right is too important to allow removal of a juror based on insufficient questioning and baseless assumptions. The worst thing that could have happened here is that Juror 7 would have remained steadfast in his view that the government had failed to prove its case, resulting in a hung jury and mistrial, a not infrequent result that ensures a defendant’s rights under the Sixth Amendment.
The district court confronted an unusual and difficult situation. A couple of vocal *829 and insistent jurors were obviously unhappy with the concerns that Juror 7 expressed concerning the government’s case, and set about the effort of getting him removed from the jury so that their desire to quickly convict the defendants could be accomplished. The district court was drawn into this effort, and abused its discretion in removing Juror 7 for reasons unrelated to his ability to follow the law or willingness to deliberate. Having succeeded in getting rid of one juror, the chilling effect on the deliberations of the remaining jurors would be manifest. For that reason, I dissent from the majority opinion. The convictions of defendants Christensen and Pellieano in the second trial should be reversed and their sentences vacated.

. It is important to remember that prior to being selected to serve on the jury, Juror 7 was subjected to voir dire questioning, the parties’ peremptory challenge, and had survived any challenges for cause.

. This statement was a clear violation of the court's instruction and would alone have been a sufficient basis to declare a mistrial. Sym-ington, 195 F.3d at 1085-87.